

*Secretary Brook L. Rollins*

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**OFFICE OF THE SECRETARY**
**WASHINGTON, D.C. 20250**

**SECRETARY'S MEMORANDUM 1078-006**

**April 3, 2025**

**INCREASING TIMBER PRODUCTION AND DESIGNATING AN EMERGENCY**
**SITUATION ON NATIONAL FOREST SYSTEM LANDS**

1.  PURPOSE

    Executive Order (EO) 14225, *Immediate Expansion of American Timber Production*
    (March 1, 2025), highlights the importance of timber production and how forest
    management and wildfire risk reduction projects can save American lives and
    communities. The United States has an abundance of timber resources that are more than
    adequate to meet our domestic timber production needs, but heavy-handed federal
    policies have prevented full utilization of these resources and made us reliant on foreign
    producers. It is vital that we reverse these policies and increase domestic timber
    production to protect our national and economic security. We can manage our forests to
    better provide domestic timber supply, create jobs and prosperity, reduce wildfire
    disasters, improve fish and wildlife habitats, and decrease costs of construction and
    energy. This Secretarial Memorandum details the actions I am directing the Forest
    Service to take in response to EO 14225.

2.  AUTHORITIES

    This Memorandum is issued under the authority of the Organic Administration Act of
    1897 (16 U.S.C. §§ 472-475, 477-482, 551); Multiple-Use Sustained-Yield Act of 1960
    (16 U.S.C. §§ 528–531), Forest and Rangeland Renewable Resources Planning Act of
    1974, as amended (16 U.S.C. §§ 1601-1613), and the Infrastructure, Investment, and Jobs
    Act (16 U.S.C. 6592c); as well as other statutory authorities governing the management,
    administration and protection of the National Forest System (NFS). Other authorities
    include, but are not limited to, EO 14225.

EXHIBIT 10, Page 1 of 6

## 3. BACKGROUND

National Forests are in crisis due to uncharacteristically severe wildfires, insect and disease outbreaks, invasive species, and other stressors whose impacts have been compounded by too little active management. For example:

- The *2023 Wildfire Hazard Potential for the Unites States* report identifies 66,940,000 acres of NFS lands under a very high or high fire risk.

- Roughly 78,800,000 acres of NFS lands are already experiencing, or are at risk of experiencing, insect and disease infestations.

These threats—combined with overgrown forests, a growing number of homes in the wildland-urban interface, and more than a century of rigorous fire suppression—have all contributed to what is now a full-blown wildfire and forest health crisis.

The Forest Service manages 144 million forested acres in 43 States. Forest plans identify approximately 43 million acres suitable for timber production. Over the last five years, the Forest Service has sold an average 3 billion board feet annually.

Immediate action is needed to mitigate risk, protect public health and safety and critical infrastructure, support local and rural economies, and mitigate threats to natural resources on NFS lands. We can do more to contribute to American prosperity and protect our national and economic security.

## 4. DIRECTIVE

### a. EMERGENCY SITUATION DETERMINATION

To address this crisis, I am making an Emergency Situation Determination (ESD) under section 40807 of the Infrastructure Investment and Jobs Act (IIJA). This ESD encompasses 66,940,000 acres of NFS lands rated as very high or high wildfire risk that are hereby determined to be an emergency situation as defined by IIJA. In addition, I have determined that the 78,800,000 acres of NFS lands designated under Section 602 of the Healthy Forest Restoration Act (HFRA), that are experiencing declining forest health; at risk of experiencing substantially increased tree mortality over the next 15 years [from time of designation] from insect and disease infestation; or containing hazard trees posing an imminent risk to public health, infrastructure, and safety, are an emergency situation as defined in the IIJA. There are approximately 33,846,000 acres of NFS lands which overlap between wildfire and insect and disease risk. In total, this ESD designates 112,646,000 acres of NFS lands as an IIJA emergency situation, which is 59 percent of all NFS lands. *See Map #1 Forest Health and Fuels Emergency Situation Determination.* I am also providing federally recognized Tribes, Alaska Native Corporations, and States the ability to request additional areas to be included in this ESD under IIJA section 40807 through the Regional Forester to the Chief of the Forest Service for approval.

EXHIBIT 10, Page 2 of 6

Actions taken pursuant to this ESD will support improving the durability, resilience, and resistance to fire, insects, and disease within forests and grasslands across the National Forest System.

Consistent with IIJA section 40807 and this determination, the Forest Service may carry out authorized emergency actions after an ESD is declared to achieve relief from threats to public health and safety, critical infrastructure, and/or mitigation of threats to natural resources on NFS lands. These actions will improve the durability, resilience, and resistance to fire, insects, and disease within national forests and grasslands across the National Forest System. To be eligible to use this authority, at least 50 percent of the treatment areas supporting this authorized emergency action must be within the designated areas.

Proposals using the special emergency action procedures at IIJA section 40807 shall:

- Reduce wildland fire risk to communities, critical infrastructure, or key ecological values; or
- Reduce/mitigate post fire risks needed to protect communities, critical infrastructure, or key ecological values; or
- Reduce hazardous fuels by removing or modifying vegetation to lower the risk of wildfires; or
- Reduce the density of fire-dependent forests; or
- Support the durability and resiliency of forests and grasslands; or
- Reduce hazardous fuels to help make wildfire response, as well as ingress or egress, safer and more effective; and
- Be authorized by the Forest or Grassland Supervisor.

Authorized emergency actions to respond to emergency situations include the:

- Salvage of dead or dying trees;
- Harvest of trees damaged by wind or ice [Note: or other natural disasters];
- Commercial and noncommercial sanitation harvest of trees to control insects or disease, including trees already infested with insects or disease;
- Reforestation or replanting of fire impacted areas through planting, control of competing vegetation, or other activities that enhance natural regeneration and restore forest species [Note: the restoration of forest species includes prevention, suppression, and eradication of insect, disease and invasive species outbreaks];
- Removal of hazardous trees in close proximity to roads and trails;
- Removal of hazardous fuels;
- Restoration of water sources or infrastructure [Note: the restoration of water sources includes watersheds];
- Reconstruction of existing utility lines; and
- Replacement of underground cables.

3

Any required environmental assessment or environmental impact statement for an authorized emergency action requires analysis of only the proposed action and the no action alternative and is not subject to the project-level pre-decisional administrative review ("objections") or any processes set forth in 36 CFR Part 218.

## b. OTHER EMERGENCY AUTHORITIES

The IIJA section 40807 authority is one of several tools that can be used to achieve expedited compliance around emergencies. Within designated areas, the Forest Service shall deploy, or continue to deploy, other emergency authorities including:

- Emergency and direct hire authorities (including hiring Tribal crews to implement and monitor);
- Expedited contracting authorities or mechanisms, including virtual incident procurement (VIPR), sole source contracting, and USDA contracting authorities and include Tribes within that effort;
- Expedited grant and agreement authorities or mechanisms, including with Tribes;
- Exemptions, waivers, expanded inclusions, and expedited mechanisms for emergency programs on joint efforts with USDA agencies and Tribes;
- Emergency consultation to comply with the Endangered Species Act;
- Emergency and programmatic consultation to comply with the National Historic Preservation Act (NHPA);
- Emergency procedures to comply with the Clean Water Act (CWA); and
- Expedited permitting, certification, and qualification processes as defined in Forest Service directives or as directed by the Chief.

Additional administrative authorities within the Forest Service Chief's discretion may also be deployed to deliver emergency and expedited response. Nothing herein changes the requirement for Tribal consultation but may require expedited consultation time frames under certain conditions. In scenarios where Tribal consultation time frames need to be expedited, the Forest Service shall notify Natural Resources and Environment.

The agency shall use IIJA Section 40807 where authorized emergency actions can facilitate current and future post-disaster recovery actions within the scope of this Emergency Situation Determination.

## c. TIMBER PRODUCTION AND SOUND FOREST MANAGEMENT

In order to increase domestic jobs and prosperity, increase economic independence, and protect our national security, the Forest Service will:

- Issue new or updated guidance to increase timber production, decrease the time to offer timber supply, and increase certainty in future timber supply. This guidance should include use of Good Neighbor Authority, stewardship contracting, and agreements or contracts under the Tribal Forest Protection Act;

- Streamline, to the extent allowable by law, all processes related to timber production, including project planning, decision-making, implementation (including preparation, appraisals and measurements), and required certifications;
- Develop a strategy to improve the efficiency of delivering the timber program and increase quantity and consistency in volume offered; and
- Identify legislative proposals that would improve timber production and sound forest management.

### d. SHARED STEWARDSHIP AGREEMENTS

The Forest Service will work with State and local partners and federally recognized Tribes to collaboratively align with their respective priorities. Many States and Tribes have Forest Action Plans that prioritize critical treatment needs, and this memo directs the Forest Service to work with States and Tribes to also prioritize these areas and projects. Given the urgency and cross-jurisdictional nature of the current crisis, the Forest Service shall work quickly to proactively update and expand Shared Stewardship Agreements to bring the full power of our partners to help address this emergency. Immediate implementation of actions under this ESD should proceed concurrently with the updating and creation of these agreements.

### e. REPORTING

Each calendar year, the Forest Service shall report to Natural Resources and Environment on the use of emergency authorities that will include those actions taken pursuant to this Forest Health and Fuels Reduction Emergency Situation Determination detailing:

- Status of any ongoing environmental analysis or compliance actions;
- Listing of completed (signed decision) or future compliance actions;
- Status of any ongoing consultation, including the National Historic Preservation Act and Endangered Species Act;
- Status of any ongoing coordination with local or state emergency management offices or other federal agencies;
- Status of coordination and consultation with federally recognized Tribal governments and/or Alaska Native Corporations; and
- Listing of any completed (implemented on the ground) or future mitigating emergency actions, to include number of acres treated or anticipated to be treated.

5. IMPLEMENTATION

The Under Secretary for Natural Resources and Environment is responsible for implementing all aspects of this memo, in coordination with the Office of General Counsel. In the absence of an Under Secretary, the Chief of the U.S. Forest Service will carry out the responsibilities assigned in this Memo.

6. EFFECTS OF THIS MEMO

This memo is intended to improve the internal management of the Department and to assure implementation of the above-referenced Executive Order. This memo and any resulting report or recommendations are not intended to, and do not create, any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its departments, agencies, instrumentalities or entities, its officers or employees, or any other person. To the extent there is any inconsistency between the provisions of this memo and any federal laws or regulations, the laws or regulations will control.

7. EFFECTIVE DATE

This memo is effective immediately.

/s/ Brooke L. Rollins
Secretary
U.S. Department of Agriculture