ADAM R.F. GUSTAFSON, Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

ERIKA DANIELLE NORMAN (CA Bar No. 268425)
Natural Resources Section
NICOLE M. SMITH, Assistant Chief
ALISON C. FINNEGAN, Senior Trial Attorney
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 532-3312
alison.c.finnegan@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

KLAMATH FOREST ALLIANCE, et al.,

          Plaintiffs,

      v.

TARA JONES, et al.,

          Defendants.

Case No. 2:25-CV-3424-DMC

**ANSWER TO FIRST AMENDED COMPLAINT**

Defendants, Tara Jones, in her official capacity as District Ranger of the Weaverville Ranger District, Rachel Birkey, in her official capacity as Forest Supervisor of the Shasta-Trinity National Forest, Jacqueline Buchanan, in her official capacity as Acting Regional Forester of the Pacific Southwest Region, Tom Schultz, in his official capacity as Chief of the United States Forest Service ("Forest Service"), the Forest Service, and the United States Department of Agriculture,  by and through their undersigned counsel, answer the First Amended Complaint (Dkt. 30) as follows:

ANSWER
Case No. 2:25-cv-3424                                  1

1. The allegations in Paragraph 1 consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied.

2. The allegations in Paragraph 2 consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied.

3. Defendants admit the allegation in the first sentence of Paragraph 3 that the northern spotted owl ("owl") is listed as a threatened species under the Endangered Species Act ("ESA"), but deny the remaining allegations in the first sentence of Paragraph 3.  The allegations in the second sentence of Paragraph 3 are conclusions of law, to which no response is required, and purport to characterize the ESA, the National Environmental Policy Act ("NEPA"), and the National Forest Management Act ("NFMA"), which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

4. Defendants admit the allegations in Paragraph 4 that a scoping notice for the North Trinity County Community Risk Reduction Project ("Project") was shared with interested parties in November 2024, and that the Forest Service has not yet issued a decision notice or finding of no significant impact for the entirety of the Project.  Defendants further aver that the Forest Service issued a decision memorandum authorizing emergency actions on October 15, 2025.

5. Defendants admit the allegation in Paragraph 5 that the Peak Fire started on August 25, 2025, and burned approximately 500 acres near the Project area.  Defendants deny the allegations in the second and fourth sentences of Paragraph 5 that the Peak Fire was fully under control as of September 9, 2025, or 100% contained as of September 15, 2025. Defendants further aver that while the fire area received a half inch of rain on September 9, resulting in 95% containment by September 10, the Peak Fire was not "fully under control" (e.g., 100% contained) until September 28, 2025, nor was the Peak Fire declared "out" until November 4, 2025.  Defendants admit the allegation in the third sentence of Paragraph 5 that the Forest

ANSWER
Case No. 2:25-cv-3424
2

Service published its last public update on the Peak Fire in a news release on September 10, 2025.

6.      Defendants admit the allegations in the first sentence of Paragraph 6 that Chief Schultz approved the request for emergency response in compliance with the National Environmental Policy consistent with the Alternative Arrangements procedures at 7 C.F.R. § 1b.9(w), Urgent but not Immediate Actions.  Defendants further aver that the authorization approved emergency fuels reduction treatments on 1,200 acres within the 12,950-acre Project area near communities in northern Trinity County, California before the completion of the North Trinity County Community Risk Reduction Project Environmental Assessment (EA) and Finding of No Significant Impact.  Defendants further admit the allegations in the first sentence of Paragraph 6 that the authorized emergency actions are located outside of the footprint of the Peak Fire.  Defendants deny the allegations in the second sentence of Paragraph 6.

7.      The allegations in Paragraph 7 are conclusions of law, to which no response is required, and purport to characterize NEPA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

8.      The allegations in the first sentence of Paragraph 8 purport to characterize NFMA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.  Defendants deny the allegations in the second sentence of Paragraph 8.

9.      The allegations in Paragraph 9 purport to characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

10.      Defendants admit the allegations in Paragraph 10 that the Forest Service began fuels reduction treatments on approximately 1,200 acres, of which approximately 400 acres include mandatory harvest of live tree under two timber sale contracts (referred to herein as the Rainier and Long Canyon contracts).  The remaining allegations in Paragraph 10 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

11.     Defendants admit the allegations in the first sentence of Paragraph 11 and further aver that the Peak Fire Emergency Response treatment area also overlaps the Lower Stoney home range.  Defendants admit the allegations in the second sentence of Paragraph 11 that the Strope, Sheep Corral, and Buck Ridge owl territories are considered occupied, and further aver that the Lower Stoney activity center also is considered occupied.  Defendants deny the remaining allegations in the second sentence of Paragraph 11 and aver that only the Sheep Corral activity center has had confirmed reproductive activity in the last five years.

12.     The allegations in the first sentence of Paragraph 12 consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied.  The allegations in the second sentence of Paragraph 12 purport to characterize NEPA and 7 C.F.R. § 1b.9(w), which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.  The allegations in the third sentence of Paragraph 12 purport to characterize the ESA and its implementing regulations, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.  The allegations in the fourth sentence of Paragraph 12 purport to characterize NFMA and its implementing regulations, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

13.     The allegations in the first and second sentences of Paragraph 13 consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied. Defendants admit the allegation in the third sentence of Paragraph 13 that the Forest Service began planning the Project more than a year before this lawsuit was filed.  The remaining allegations in the third sentence of Paragraph 13 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

14.     The allegations in Paragraph 14 consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied.

ANSWER
Case No. 2:25-cv-3424                                                                                    4

15. The allegations in Paragraph 15 consist of Plaintiffs' characterization of their lawsuit and are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

16. The allegations in Paragraph 16 consist of Plaintiffs' characterization of their lawsuit and are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

17. The allegations in Paragraph 17 consist of Plaintiffs' characterization of their lawsuit and their requested relief, to which no response is required. To the extent a response is required, the allegations are denied.

18. The allegations in Paragraph 18 consist of Plaintiffs' characterization of their lawsuit and their requested relief, to which no response is required. To the extent a response is required, the allegations are denied.

19. The allegations in Paragraph 19 consist of Plaintiffs' characterization of their lawsuit and their requested relief, to which no response is required. To the extent a response is required, the allegations are denied.

20. The allegations in Paragraph 20 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

21. The allegations in the first and second sentences of Paragraph 21 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.  Defendants admit the allegations in the third sentence of Paragraph 21.

22. The allegations in Paragraph 22 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

23. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and deny them on that basis.

24. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and deny them on that basis.

25. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and deny them on that basis.

ANSWER
Case No. 2:25-cv-3424                                                                                      5

26. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and deny them on that basis.

27. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and deny them on that basis.

28. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and deny them on that basis.

29. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 29 and deny them on that basis.

30. Defendants admit the allegations in the first sentence of Paragraph 30. Defendants deny the allegations in the second sentence of Paragraph 30. The allegations in the third sentence of Paragraph 30 consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied.

31. Defendants admit the allegations in the first and second sentences of Paragraph 31. The allegations in the third sentence of Paragraph 31 consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied.

32. Defendants deny the allegation in the first sentence of Paragraph 32 that Jacqueline Buchanan is the Regional Forester for the Forest Service's Pacific Southwest Region, and aver that Ms. Buchanan is the Acting Regional Forester for the Forest Service's Pacific Southwest Region. Defendants admit the remaining allegations in the first sentence of Paragraph 32. Defendants deny the allegations in the second sentence of Paragraph 32. The allegations in the third sentence of Paragraph 32 consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied.

33. Defendants admit the allegations in the first and second sentences of Paragraph 33. The allegations in the third sentence of Paragraph 33 consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied.

34. Defendants admit the allegations in Paragraph 34.

ANSWER
Case No. 2:25-cv-3424                                                                      6

35.    Defendants admit the allegations in Paragraph 35.

36.    The allegations in Paragraph 36 purport to characterize NEPA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

37.    The allegations in Paragraph 37 purport to characterize NEPA and cited case law, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

38.    The allegations in Paragraph 38 purport to characterize NEPA and cited case law, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

39.    The allegations in Paragraph 39 are conclusions of law, to which no response is required, and purport to characterize NEPA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

40.    The allegations in Paragraph 40 are conclusions of law, to which no response is required, and purport to characterize NEPA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

41.    The allegations in Paragraph 41 are conclusions of law, to which no response is required, and purport to characterize NEPA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

42.    The allegations in Paragraph 42 are conclusions of law, to which no response is required, and purport to characterize NEPA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

43.    The allegations in Paragraph 43 are conclusions of law, to which no response is required, and purport to characterize NEPA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

44.    The allegations in Paragraph 44 are conclusions of law, to which no response is required, and purport to characterize NEPA's implementing regulations, which speak for

themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

45. The allegations in Paragraph 45 are conclusions of law, to which no response is required, and purport to characterize NEPA's implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

46. The allegations in Paragraph 46 are conclusions of law, to which no response is required, and purport to characterize NEPA's implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

47. The allegations in Paragraph 47 are conclusions of law, to which no response is required, and purport to characterize NEPA's implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

48. The allegations in Paragraph 48 purport to characterize NFMA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

49. The allegations in Paragraph 49 are conclusions of law, to which no response is required, and purport to characterize NFMA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

50. The allegations in Paragraph 50 are conclusions of law, to which no response is required, and purport to characterize NFMA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

51. The allegations in Paragraph 51 are conclusions of law, to which no response is required, and purport to characterize NFMA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

52. Defendants admit the allegation in Paragraph 52 that the Forest Service adopted a Forest Plan for the Shasta-Trinity National Forest in 1995. The remaining allegations in

ANSWER

Paragraph 52 purport to characterize the Shasta-Trinity National Forest's Forest Plan, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

53.     The allegations in Paragraph 53 purport to characterize the Shasta-Trinity National Forest's Forest Plan, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

54.     Defendants admit the allegation in the first sentence of Paragraph 54 that the Shasta-Trinity National Forest is within the range of the owl. The remaining allegations in Paragraph 54 purport to characterize the Northwest Forest Plan, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

55.     The allegations in Paragraph 55 purport to characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

56.     The allegations in Paragraph 56 purport to characterize the ESA and its implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

57.     The allegations in Paragraph 57 purport to characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

58.     The allegations in Paragraph 58 purport to characterize the ESA and its implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

59.     The allegations in Paragraph 59 purport to characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

60. The allegations in Paragraph 60 purport to characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

61. The allegations in Paragraph 61 purport to characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

62. The allegations in Paragraph 62 purport to characterize the ESA's implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

63. The allegations in Paragraph 63 purport to characterize the ESA's implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

64. The allegations in Paragraph 64 are conclusions of law, to which no response is required, and purport to characterize the ESA and its implementing regulations, which speak for themselves and are the best evidence of its contents. Any allegations contrary to their plain language, meaning, or context are denied.

65. The allegations in Paragraph 65 are conclusions of law, to which no response is required, and purport to characterize the ESA's implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

66. The allegations in Paragraph 66 are conclusions of law, to which no response is required, and purport to characterize the ESA's implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

67. The allegations in Paragraph 67 are conclusions of law, to which no response is required, and purport to characterize the ESA's implementing regulations, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

68.    The allegations in Paragraph 68 are conclusions of law, to which no response is required, and purport to characterize the ESA and its implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

69.    The allegations in Paragraph 69 are conclusions of law, to which no response is required, and purport to characterize the ESA's implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

70.    The allegations in Paragraph 70 are conclusions of law, to which no response is required, and purport to characterize the ESA's implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

71.    The allegations in Paragraph 71 are conclusions of law, to which no response is required, and purport to characterize the ESA's implementing regulations, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

72.    The allegations in Paragraph 72 are conclusions of law, to which no response is required, and purport to characterize the ESA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

73.    The allegations in Paragraph 73 purport to characterize the Administrative Procedure Act (APA), which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

74.    The allegations in Paragraph 74 purport to characterize the APA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

75.    The allegations in Paragraph 73 purport to characterize the APA, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

ANSWER
Case No. 2:25-cv-3424                                                                11

76.     Defendants admit the allegations in Paragraph 76.

77.     Defendants admit the allegations in the first sentence of Paragraph 77 that on November 15, 2024, the Shasta-Trinity National Forest Supervisor Rachel Birkey signed a scoping letter for the Project, which is a larger project that included the Peak Fire Emergency Response treatment area. On November 19, 2024, electronic copies of the scoping letter and map were sent to the Project mailing list and additional Project information (including a scoping project proposal and maps) were published on the Project website. A legal notice for the public scoping opportunity to comment was published in the Redding Record Searchlight and Trinity Journal on November 20, 2024.  Defendants admit the allegations in the second sentence of Paragraph 77.

78.     The allegations in Paragraph 78 purport to characterize the Project's Scoping Proposal, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

79.     The allegations in the first sentence of Paragraph 79 purport to characterize the Project's Scoping Proposal, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.  The allegations in the second and third sentences of Paragraph 79 purport to characterize 16 U.S.C. § 6592c(a)(2), which speaks for itself and is the best evidence of its contents.  Any allegations contrary to its plain language, meaning, or context are denied.

80.     Defendants admit the allegations in the first sentence of Paragraph 80 that Plaintiffs provided comments on the Project's Scoping Proposal.  The remaining allegations in Paragraph 80 purport to characterize comments that Plaintiffs submitted on the Project's Scoping Proposal, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

81.     The allegations in Paragraph 81 purport to characterize comments that Plaintiffs submitted on the Project's Scoping Proposal, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

ANSWER
Case No. 2:25-cv-3424                                                                                      12

82. Defendants admit the allegation in Paragraph 82 that no further documents were released with respect to the Project, but deny that no other documents were released nor information shared regarding the Peak Fire Emergency Response treatments. Defendants further aver that the Decision Memorandum granting alternative arrangements was shared with Plaintiffs' counsel on November 25, 2025, and was posted to the Project website on December 4, 2025. Defendants further aver that the Forest Service invited members of the local community to participate in a field trip to the Project area on November 19, 2025.

83. Defendants admit the allegations in Paragraph 83 and further aver that Chief Schultz issued a decision authorizing the Peak Fire Emergency Response treatments and NEPA alternative arrangements on October 15, 2025. NEPA analysis and ESA consultation are ongoing for the larger Project, which includes the Peak Fire Emergency Response treatments. A separate ESA consultation also is underway for the Peak Fire Emergency Response treatments, and the Forest Service submitted a preliminary Biological Assessment to the U.S. Fish and Wildlife Service on January 29, 2026.

84. Defendants admit the allegation in the first sentence of Paragraph 84 that President Trump issued Executive Order 14225 on March 1, 2025. The allegations in the second sentence of Paragraph 84 purport to characterize Executive Order 14225, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

85. The allegations in Paragraph 85 purport to characterize Executive Order 14225, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

86. The allegations in Paragraph 86 purport to characterize Executive Order 14225, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

87. Defendants admit the allegation in the first sentence of Paragraph 87. The allegations in the second sentence of Paragraph 87 purport to characterize Secretary's

ANSWER
Case No. 2:25-cv-3424                                                                 13

Memorandum 1078-006, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

88.     The allegations in Paragraph 88 purport to characterize Secretary's Memorandum 1078-006, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

89.     The allegations in the first, second, fourth, and fifth sentences of Paragraph 89 purport to characterize 16 U.S.C. § 6592c, which speaks for itself and is the best evidence of its contents.  Any allegations contrary to its plain language, meaning, or context are denied.  The allegations in the third sentence of Paragraph 89 purport to characterize 16 U.S.C. § 6592c and 36 C.F.R. part 218, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

90.     Defendants admit the allegation in Paragraph 90 that there was a lapse in appropriations for Fiscal Year 2026 funding that began on October 1, 2025, and which impacted some Forest Service staffing and operations.

91.     Defendants admit the allegation in Paragraph 91 that Forest Service Chief Schultz approved an emergency response request on October 15, 2025, and authorized 1,200 acres of fuels reductions treatments within the 12,950-acre Project area.

92.     Defendants admit the allegations in the first sentence of Paragraph 92.  The allegations in the second, fourth, and fifth sentences of Paragraph 92 purport to characterize the advertisement and contract documents for the Rainier Timber Sale, which speak for themselves and are the best evidence of its contents.  Any allegations contrary to their plain language, meaning, or context are denied.  Defendants admit the allegation in the third sentence of Paragraph 92 that timber sale advertisement and contract documents for the Rainier Timber Sale were available on the Forest Service's website and further aver that notice of the sale was provided by U.S. mail and email to potential purchasers on October 20, 2025, consistent with the Forest Service's historical practice. Defendants further aver that Kimberly Baker, who is the Conservation Director for Plaintiff Environmental Protection Information Center, is included on the timber mailing list used for postal delivery of timber sale notices on the Shasta-Trinity

ANSWER
Case No. 2:25-cv-3424                                                          14

National Forest, and the Forest Service utilized that mailing list for the Rainier Timber Sale notice that was mailed out on October 20, 2025. Defendants deny the remaining allegations in the third sentence of Paragraph 92.

93. Defendants admit the allegations in the first sentence of Paragraph 93. The allegations in the second, fourth, and fifth sentences of Paragraph 93 purport to characterize the advertisement and contract documents for the Long Canyon Timber Sale, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied. Defendants admit the allegations in the third sentence of Paragraph 93 that timber sale advertisement and contract documents for the Long Canyon Timber Sale were available on the Forest Service's website and further aver that notice of the sale was provided by U.S. mail and email to potential purchasers on October 24, 2025, consistent with the Forest Service's historical practice. Defendants further aver that Kimberly Baker, who is the Conservation Director for Plaintiff Environmental Protection Information Center is included on the timber mailing list used for postal delivery of timber sale notices on the Shasta-Trinity National Forest, and the Forest Service utilized that mailing list for the Long Canyon Timber Sale notice that was mailed out on October 24, 2025. Defendants deny the remaining allegations in the third sentence of Paragraph 93.

94. The allegations in the first and second sentences of Paragraph 94 purport to characterize the advertisement and contract documents for the Rainier Timber Sale and the Long Canyon Timber Sale, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied. Defendants admit the allegations in the third sentence of Paragraph 94 that the contracts for the Rainier Timber Sale and the Long Canyon Timber Sale terminated on February 1 and January 31, 2026, but aver that the termination dates were chosen to prioritize completion of the contracts before the start of the owl's nesting season. Defendants further aver that both contracts have been extended because of lengthy wet weather shutdowns in December 2025 and January 2026, and now have an October 14, 2026, termination date.

ANSWER
Case No. 2:25-cv-3424　　　　　　　　　　　　　　　　　　　　　　　　　　15

95.    The allegations in Paragraph 95 purport to characterize the contracts for the Rainier Timber Sale and the Long Canyon Timber Sale, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

96.    The allegations in Paragraph 96 purport to characterize the contracts for the Rainier Timber Sale and the Long Canyon Timber Sale, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

97.    The allegations in Paragraph 97 purport to characterize the contracts for the Rainier Timber Sale and the Long Canyon Timber Sale, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

98.    Defendants deny the allegation in Paragraph 98 that the Rainier Timber Sale and Long Canyon Timber Sale include stands that have not been previously logged, and aver that these timber sale areas show evidence of prior management activity.  Defendants admit that these timber sales include stands that are not plantations (have not been previously logged and replanted).  Defendants admit that timber sale units outside of plantations occur in "natural stands" and aver that natural stands include uneven-aged stands that have been previously logged.  Defendants further aver that even after thinning treatments under these timber sales, the stands would remain "natural stands."  The remaining allegations in Paragraph 98 purport to characterize the contracts for the Rainier Timber Sale and the Long Canyon Timber Sale, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

99.    Defendants deny the allegations in Paragraph 99.

100.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 and deny them on that basis.

101.    Defendants admit the allegation in Paragraph 101 that Denise Boggs of Conservation Congress sent emails to Shasta-Trinity Forest Supervisor Rachel Birkey, Tahoe

ANSWER
Case No. 2:25-cv-3424                                                                                      16

Forest Supervisor Chris Feutrier, and Acting Regional Forester Jason Kuiken on November 4, 2025. The remaining allegations in Paragraph 101 purport to characterize Ms. Boggs' November 4, 2025, emails, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

102.    Defendants admit the allegations in the first sentence of Paragraph 102 and aver that Forest Service employees returned to work on November 13, 2025. The allegations in the second sentence of Paragraph 102 purport to characterize a November 13, 2025, email from District Ranger Jones to Ms. Boggs of Conservation Congress, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

103.    The allegations in Paragraph 103 purport to characterize a November 13, 2025, email from District Ranger Jones to Ms. Boggs of Conservation Congress, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

104.    The allegations in Paragraph 104 purport to characterize emails exchanged between Keli Mcelroy of the Forest Service and Ryan Fogerty of the U.S. Fish and Wildlife Service, dated November 6 and 7, 2026, which speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

105.    Defendants admit the allegations in Paragraph 105 and aver that Denise Boggs of Conservation Congress sent emails on November 13, 2025, November 14, 2025, and November 19, 2025, requesting information about the Forest Service's consultation under Section 7 of the ESA and the emergency authorization document signed by Chief Schultz.

106.    Defendants deny the allegations in Paragraph 106 and aver that Forest Service conducted a public field trip to the Peak Emergency Response Area on November 19, 2025, and that the attendance sheet for that field trip indicates that a member of one of the Plaintiff organizations, Kimberly Baker, was in attendance. Defendants lack knowledge or information sufficient to form a belief as to whether other members of the public in attendance are members of one or more of the Plaintiff organizations.

107.    Defendants admit the allegation in Paragraph 107 that Oliver Stiefel, counsel for Plaintiffs, sent an email to Ritu Ahuja, attorney in the U.S. Department of Agriculture's Office of the General Counsel, on November 20, 2025.  The remaining allegations in Paragraph 107 purport to characterize the November 20, 2025, email, which speaks for itself and is the best evidence of its contents.  Any allegations contrary to its plain language, meaning, or context are denied.

108.    Defendants admit the allegation in Paragraph 108 that Ms. Ahuja sent an email to Mr. Stiefel on November 21, 2025.  The remaining allegations in Paragraph 108 purport to characterize the November 21, 2025, email, which speaks for itself and is the best evidence of its contents.  Any allegations contrary to its plain language, meaning, or context are denied.

109.    Defendants admit the allegations in the first sentence of Paragraph 109. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 109 and deny them on that basis.

110.    Defendants admit the allegation in the first sentence of Paragraph 110 that counsel for the Forest Service provided counsel for Plaintiffs with the Forest Service Chief's Decision Memorandum approving alternative arrangements for the Peak Fire-North Trinity Proposed Emergency Response Request on November 25, 2025.  The allegations in the second sentence of Paragraph 110 purport to characterize the Forest Service Chief's Decision Memorandum approving alternative arrangements for the Peak Fire-North Trinity Proposed Emergency Response Request, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.  Defendants admit the allegations in the third sentence of Paragraph 110.

111.    The allegations in the first sentence of Paragraph 111 purport to characterize the Forest Service Chief's Decision Memorandum approving alternative arrangements for the Peak Fire-North Trinity Proposed Emergency Response Request, which speaks for itself and is the best evidence of its contents.  Any allegations contrary to its plain language, meaning, or context are denied.  The allegations in the second sentence of Paragraph 111 purport to characterize the Forest Service Chief's Decision Memorandum approving alternative arrangements for Peak Fire

ANSWER
Case No. 2:25-cv-3424                                                                                          18

North Trinity Emergency Response Request, which speaks for itself and is the best evidence of its contents, and consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied.

112. The allegations in Paragraph 112 purport to characterize the Forest Service Chief's Decision Memorandum approving alternative arrangements for the Peak Fire-North Trinity Proposed Emergency Response Request, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

113. Defendants deny the allegations in Paragraph 113.

114. Defendants deny the allegations in Paragraph 114.

115. The allegations in the first sentence of Paragraph 115 purport to characterize the Project's Scoping Proposal, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied. Defendants deny the allegations in the second sentence of Paragraph 115 and aver that four owl activity centers in the Peak Fire Emergency Response Area are considered occupied or recently occupied within the last five years. Defendants deny the allegations in the third sentence of Paragraph 115 and aver that only the Sheep Corral activity center has had confirmed reproductive activity in the last five years.

116. The allegations in Paragraph 116 purport to characterize, without citation or attribution, documents that speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

117. The allegations in Paragraph 117 purport to characterize, without citation or attribution, documents that speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

118. Defendants admit the allegations in Paragraph 118.

119. Defendants admit the allegations in Paragraph 119.

120. The allegations in Paragraph 120 purport to characterize, without citation or attribution, documents that speak for themselves and are the best evidence of their contents. Any allegations contrary to their plain language, meaning, or context are denied.

ANSWER
Case No. 2:25-cv-3424                                                                                        19

121.    The allegations in Paragraph 121 purport to characterize, without citation or attribution, documents that speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

122.    Defendants deny the allegations in the first sentence of Paragraph 122 and aver that the allegations purport to characterize the 1990 Determination of Threatened Status for the Northern Spotted Owl that was promulgated by the U.S. Fish and Wildlife Service, which speaks for itself and is the best evidence of its contents.  Any allegations contrary to its plain language, meaning, or context are denied.  The allegations in the second sentence of Paragraph 122 purport to characterize the Revised Designation of Critical Habitat for the Northern Spotted Owl, 86 Fed. Reg. 62606 (Nov. 10, 2021), which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

123.    Defendants deny the allegations in the first sentence of Paragraph 123 and aver that the allegations in Paragraph 123 purport to characterize the 12-Month Finding for the Northern Spotted Owl, 85 Fed. Reg. 81144 (Dec. 15, 2020) that was promulgated by the U.S. Fish and Wildlife Service and speaks for itself and is the best evidence of its contents.  Any allegations contrary to its plain language, meaning, or context are denied.

124.    Defendants deny the allegations in Paragraph 124 and aver that the allegations in Paragraph 124 purport to characterize the 12-Month Finding for the Northern Spotted Owl, 85 Fed. Reg. 81144 (Dec. 15, 2020) that was promulgated by the U.S. Fish and Wildlife Service and speaks for itself and is the best evidence of its contents.  Any allegations contrary to its plain language, meaning, or context are denied.

125.    The allegations in Paragraph 125 purport to characterize, without citation or attribution, "[s]everal recent scientific and peer-reviewed papers" that speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

126.    Defendants deny the allegations in Paragraph 126 and aver that the allegations in Paragraph 126 purport to characterize, without citation or attribution, a document that speaks for

ANSWER
Case No. 2:25-cv-3424                                                                    20

itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

127.    Defendants deny the allegations in the first sentence of Paragraph 127 and aver that the U.S. Fish and Wildlife Service published a Revised Recovery Plan for the owl in 2011. The allegations in the second sentence of Paragraph 127 purport to characterize the Revised Recovery Plan for the owl, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

128.    The allegations in Paragraph 128 purport to characterize the Revised Recovery Plan for the owl, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

129.    The allegations in Paragraph 129 purport to characterize the Revised Recovery Plan for the owl, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

130.    The allegations in Paragraph 130 purport to characterize the Revised Recovery Plan for the owl, which speaks for itself and is the best evidence of its contents. Any allegations contrary to its plain language, meaning, or context are denied.

## FIRST CLAIM FOR RELIEF

131.    Defendants incorporate by reference each and every response to the allegations in the paragraphs numbered 1 through 130 above.

132.    The allegations in Paragraph 132 are conclusions of law, to which no response is required. To the extent a response is required, the allegations are denied.

133.    The allegations in Paragraph 133 are conclusions of law, to which no response is required. To the extent a response is required, the allegations are denied.

134.    The allegations in Paragraph 134 are conclusions of law, to which no response is required. To the extent a response is required, the allegations are denied.

135.    The allegations in Paragraph 135 are conclusions of law, to which no response is required. To the extent a response is required, the allegations are denied.

136.    The allegations in Paragraph 136 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

137.    The allegations in Paragraph 137 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

**SECOND CLAIM FOR RELIEF**

138.    Defendants incorporate by reference each and every response to the allegations in the paragraphs numbered 1 through 137 above.

139.    The allegations in Paragraph 139 consist of Plaintiffs' characterization of their lawsuit and are conclusions of law, to which no response is required. To the extent a response is required, the allegations are denied.

140.    The allegations in Paragraph 140 purport to characterize "the Forest Plan," which speaks for itself and is the best evidence of its contents.  Any allegations contrary to its plain language, meaning, or context are denied.

141.    The allegations in Paragraph 141 consist of Plaintiffs' characterization of their lawsuit and are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

142.    The allegations in Paragraph 142 consist of Plaintiffs' characterization of their lawsuit and are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

143.    The allegations in Paragraph 143 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

144.    The allegations in Paragraph 144 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

**THIRD CLAIM FOR RELIEF**

145.    Defendants incorporate by reference each and every response to the allegations in the paragraphs numbered 1 through 144 above.

ANSWER
Case No. 2:25-cv-3424                                                                22

146.    The allegations in Paragraph 146 purport to characterize the ESA and its implementing regulations, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

147.    The allegations in Paragraph 147 purport to characterize the ESA and its implementing regulations, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.

148.    The allegations in the first sentence of Paragraph 148 purport to characterize the ESA's implementing regulations, which speak for themselves and are the best evidence of their contents.  Any allegations contrary to their plain language, meaning, or context are denied.  The allegations in the second sentence of Paragraph 148 purport to characterize the Endangered Species Consultation Handbook, which speaks for itself and is the best evidence of its contents.  Any allegations contrary to its plain language, meaning, or context are denied.

149.    Defendants admit the allegations in Paragraph 149.

150.    Defendants deny the allegations in Paragraph 150.

151.    The allegations in Paragraph 151 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

152.    The allegations in Paragraph 152 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

153.    The allegations in Paragraph 153 are conclusions of law and consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied.

154.    The allegations in Paragraph 154 are conclusions of law and consist of Plaintiffs' characterization of their lawsuit, to which no response is required. To the extent a response is required, the allegations are denied.

155.    The allegations in Paragraph 155 are conclusions of law, to which no response is required.  To the extent a response is required, the allegations are denied.

## RESPONSE TO REQUEST FOR RELIEF

The remainder of the First Amended Complaint consists of Plaintiffs' Request for Relief, to which no response is required. To the extent a response is required, Defendants deny that Plaintiffs are entitled to any of the relief requested in Prayer for Relief, including subparagraphs (a)-(i), or to any relief whatsoever.

## GENERAL DENIAL

Defendants deny each and every allegation of the First Amended Complaint not otherwise expressly admitted, qualified or denied herein.

## AFFIRMATIVE DEFENSES

1.    The First Amended Complaint fails to state a claim upon which relief can be granted.

2.    Plaintiffs lack standing as to some or all of their claims.

3.    Defendants reserve their right to assert additional affirmative defenses during the course of this litigation.

DATED: March 17, 2026          Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division
NICOLE M. SMITH, Assistant Chief

/s/      Alison C. Finnegan
ALISON C. FINNEGAN
Senior Trial Attorney (Penn. Bar. No. 88519)
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 532-3312
alison.c.finnegan@usdoj.gov

/s/      Erika Danielle Norman
ERIKA DANIELLE NORMAN (CA Bar No. 268425)

ANSWER
Case No. 2:25-cv-3424                                              24

Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 532-3143
erika.norman@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ Alison C. Finnegan
Senior Trial Attorney